UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Jonathan M. Rodriguez, # 331997,      )     C/A No. 9:12-01832-RBH-BM
*a.k.a. Johnathan Rodriquez,*      )
     )
           Plaintiff,      )
     )
vs.      )
     )     REPORT AND RECOMMENDATION
Bruce Oberman, Supervisor,      )
     )
           Defendant.      )
     )

Plaintiff Jonathan M. Rodriguez, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate at Lee Correctional Institution, and files this action *in forma pauperis* under 28 U.S.C. § 1915. Plaintiff seeks monetary damages and injunctive relief for alleged constitutional violations by Defendant Oberman. ECF No. 1, pages 2, 12-13.

Under established local procedure in this judicial district, a careful review has been made of the pro se Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915; 28 U.S.C. § 1915A; the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996); and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995) (*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983). Further, as Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Hughes v. Rowe*, 449 U.S. 5 (1980); *Estelle v. Gamble*, 429 U.S. 97 (1976).



Even when considered under this less stringent standard, however, the undersigned finds and concludes for the reasons set forth hereinbelow that the *pro se* Complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F. 2d 387 (4th Cir. 1990).

### Background

The Complaint alleges that, on January 4, 2012, Plaintiff denounced his affiliation with a prison gang and sought protective custody due to fear of retaliation by gang members. ECF No. 1, page 5. Lt. Johnson placed Plaintiff in the Florence Unit on protective custody. *Id.* On June 10 or 11, 2012, Plaintiff received an institutional charge resulting from his admitted former association with a security threat group (STG). *Id.* Shortly thereafter, Plaintiff was asked to decide whether he wanted to remain in protective custody and allegedly warned by Ms. Winters, an Administrative Segregation Unit (ASU) classification worker, that Plaintiff would be placed in ASU if he chose not to do so. *Id.* Ms. Winters also allegedly told Plaintiff that he would go before a "P.C. Board" where she would be present and would have Plaintiff placed in "security detention." *Id.* Plaintiff chose to remain in protective custody and was moved to the ASU on February 13, 2012. *Id.* Plaintiff indicates that he requested Zen Buddhist religious materials and was informed by Cpl. Bell that he was allowed only a Bible or Quran in ASU. *Id.* Plaintiff sent a request to the prison Chaplain on February 15, 2012, seeking help in obtaining Buddhist religious materials. *Id.*

On February 22, 2012, Plaintiff went before a "P.C. Board Meeting" attended by ASU Classification worker Ms. Winters, ASU Supervisor Defendant Bruce Oberman, and Lt. F. Bowman. *Id.* at 6. The board determined that Plaintiff provided insufficient information to remain in



2

protective custody and asked Plaintiff to return to the general population. *Id.* Plaintiff, who refused general population placement, requested removal from Lee Correctional Institution. *Id.* Plaintiff then filed grievances against Defendant Oberman and Ms. Winters for failing to provide the safety measures requested. *Id.* Plaintiff's grievances were subsequently returned, unprocessed. *Id.*

On or around February 23, 2012, Ms. Winters authorized Plaintiff's move into a two-man cell on the North side of ASU. *Id.* Plaintiff objected, claiming it was not safe for him to be placed in a two person cell near officers with whom Plaintiff had previous issues. *Id.* Plaintiff alleges that one of these unidentified officers placed a bug in his food after his move into the two person cell and, on February 24 or 25, 2012, the same officer placed glass in Plaintiff's food. *Id.* at 7. Plaintiff further alleges that he observed yet another officer, also unidentified, trying to watch Plaintiff in the shower. *Id.* On March 8, 2012, the Chaplain responded to Plaintiff's request for Buddhist religious materials and indicated that Plaintiff, upon leaving lock-up, would need to fill out a religious preference form in the Chaplain's presence. *Id.* at 6. Later that day, Plaintiff filed grievances addressing his request for religious materials, alleged threats by officers, and alleged sexual harassment in the shower. *Id.* at 7. Plaintiff states that the grievances were returned, unprocessed. *Id.*

On May 5, 2012, Plaintiff was moved to "SuperMax." *Id.* at 8. Plaintiff alleges that his SuperMax cell was infested with bugs and spiders, had holes in the ceiling and mold in the shower. *Id.* Lt. Davis informed Plaintiff the move was prompted by Plaintiff's alleged refusal to allow his former roommate to enter their cell. *Id.* Lt. Durrant advised that Plaintiff was moved so that he would not have to worry about being watched in the shower or having an officer tamper with his food. *Id.* Lt. Durrant also said Plaintiff's placement in SuperMax had been approved by Defendant



Oberman. *Id.* Plaintiff alleges that he was actually placed in SuperMax in retaliation for filing too many grievances. *Id.*

Plaintiff sates that he began a hunger strike on May 17, 2012, which lasted until May 23, 2012. *Id.* at 8-9. The Complaint indicates that officers did not acknowledge the hunger strike, however, Plaintiff received medical treatment within twenty-four hours of refusing food. *Id.* at 9. Plaintiff further claims that he was informed by a mental health counselor that a copy of his reasons for undertaking the hunger strike would be forwarded to Defendant Oberman. *Id.* at 9. Plaintiff subsequently filed grievances against officers who acted aggressively during the hunger strike, but received no response. *Id.*

On May 25, 2012, inmates assigned to ASU learned that the unit would be searched. *Id.* The Red and Burgundy Teams conducted the search, using gas where necessary to retain control. *Id.* at 9-10. During a search of Plaintiff's SuperMax cell, Plaintiff talked to Defendant Oberman about the right to practice Buddhism while assigned to the ASU. *Id.* at 10. Defendant Oberman said he would talk to the Chaplain about the issue and another officer informed Defendant Oberman that Plaintiff must complete paperwork to receive his religious materials. *Id.* Members of the Red Team confiscated Plaintiff's personal and legal paperwork during the search. *Id.* Plaintiff blames the actions of Defendant Oberman and the Red/Burgundy Teams for a hostage taking incident which later occurred in the ASU on June 5, 2012. *Id.* Plaintiff alleges that, although SuperMax inmates were not involved in the incident, they were subjected to teargas fired into areas of the ASU and were not provided medical attention for such exposure. *Id.*

On June 10, 2012, Plaintiff was removed from SuperMax and placed in a two person cell on the North side of the ASU. *Id.* at 11. Plaintiff alleges that the room's windows and lights are



4

broken. *Id.* Plaintiff also claims that inmates have not had showers in twenty-four days. *Id.*
Plaintiff advises the court that Defendant Oberman "has a history of tampering with inmate files,"
giving "inmates extended time on lock-up," and of purposely losing inmates' property. *Id.*
However, Plaintiff states that he has remained disciplinary free and that his property is currently
stored in the property room at ASU. *Id.* Thus, Plaintiff indicates that he has not been subjected to
any such actions by Defendant Oberman to date.

Plaintiff seeks monetary damages and injunctive relief. *Id.* at 12-13.

<u>Discussion</u>

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of
substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere
conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994)(quoting *Baker v. McCollan*, 443 U.S. 137,
144 n. 3 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal
right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey,*
*Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential
elements: (1) that a right secured by the Constitution or laws of the United States was violated, and
(2) that the alleged violation was committed by a person acting under the color of state law. *West v.*
*Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff alleges that he has been denied religious materials, denied showers, placed in
unclean cells, served tainted food, sexually harassed, and threatened while in ASU placement.
However, there is only one Defendant named in the Complaint: Bruce Oberman, and although
Oberman is alleged to be the supervisor of the ASU, the Complaint provides no facts to establish that
Defendant Oberman has been personally involved in, or even personally witnessed, any of these

incidents. In order to establish liability under § 1983, a plaintiff must affirmatively show that a defendant acted personally in the deprivation of his constitutional rights; *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); and when a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. *See Howard v. Childs*, C/A No. 3:11-3418-JFA-SVH, 2012 WL 527596 at *4 (D.S.C. Jan. 19, 2012); *Curtis v. Ozmint*, C/A No. 3:10-3053-CMC-JRM, 2011 WL 635302 at *4 n.5 (D.S.C. Jan. 5, 2011). Therefore, Plaintiff's claims for denial of religious materials, cruel and unusual punishment, and deliberate indifference to health and safety are all subject to summary dismissal because Oberman, the only named Defendant, is not alleged to have perpetrated any of these alleged wrongs.[1]

In addition, the few allegations that directly reference Oberman do not establish liability under § 1983. First, the Complaint alleges that Defendant Oberman was present at Plaintiff's protective custody board meeting. However, this meeting resulted in Plaintiff remaining in the ASU rather than being transferred back to the general population. Therefore, no evidence of a deliberate indifference to Plaintiff's personal health or safety is shown in these alleged facts - by Oberman or anyone else. While Plaintiff was not transferred to the Lee Correctional Institution, as he requested,

---

[1] While Plaintiff alleges that Oberman is the supervisor responsible for the operation of the ASU, a § 1983 claim for supervisory liability cannot rest on the doctrine of respondeat superior. *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir.1999). Supervisory officials may be held liable, in some circumstances, for constitutional injuries inflicted by their subordinates. However, certain criteria must first be established. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). A plaintiff must show that the supervisory official was (1) actually or constructively aware of a risk of constitutional injury, (2) deliberately indifferent to that risk, and (3) that an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Carter v. Morris*, 164 F.3d at 221. At best, the Plaintiff only speculates that Defendant Oberman had knowledge of the conduct of other officials (which conduct would itself have to be constitutional violations) because of his supervisory position. Such allegations are insufficient to establish supervisory liability against Defendant Oberman.

6



there is no constitutional right for a state or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994). This same finding applies to Plaintiff's subsequent placement in the "supermax". Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. *See Sandin v. Conner,* 515 U.S. 472, 483-84 (1995)("federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment")( citing *Wolff v. McDonnell*, 418 U.S. 539, 561-63 (1974)). Thus, the placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review *unless* state or federal law places limitations on official discretion.[2] *Hayes v. Thompson*, 726 F.2d 1015, 1016-1017 (4th Cir. 1984)(collecting cases). This is true even if an inmate has requested protective custody. *Taylor v. Rogers*, 781 F.2d 1047 (4th Cir. 1986)(less favorable conditions imposed on inmates requesting protective custody than those afforded general prison population did not deny inmates equal protection or due process, and the loss of amenities did not violate the Eighth Amendment against cruel and unusual punishment). Hence, although Plaintiff is not satisfied with his current living conditions, the Defendant's classification and institutional placement of the Plaintiff (assuming that Oberman was even the one

---

[2]Cases previously decided in this judicial district make it clear that South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections (SCDC) from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. *See, e.g., Keeler v. Pea*, 782 F. Supp. 42, 43-44, (D.S.C. 1992), (citing *Meachum v. Fano*, 427 U.S. 215 (1976)); *see also Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D.S.C. 1978); *Brown v. Evatt*, 470 S.E.2d 848 (1996)(South Carolina Supreme Court held that neither state statutes creating/defining SCDC's powers, nor SCDC's operational classification regulations, created a liberty interest in security or custody classifications).



responsible for these placements) have not violated his constitutional rights. *See Wolff v. McDonnell*, 418 U.S. 539, 558-562 (1974).

Plaintiff also appears to blame Oberman for alleged unprocessed grievances.[3] However, inmates have no constitutionally protected right to a grievance procedure; *see Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Daye v. Rubenstein*, No. 10-6938, 2011 WL 917248 at *2 (4th Cir. March 17, 2011); *see also Blagman v. White*, 112 F. Supp. 2d 534, 542 (W.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure); *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)("[A] prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."); and dismissal of this case is not otherwise being recommended based on any alleged failure of the Plaintiff to exhaust his administrative remedies before filing this lawsuit. Thus, Defendant Oberman's alleged refusal to process Plaintiff's grievances fails to state a cognizable claim under § 1983.

Plaintiff further claims that he was subjected to retaliation by Defendant Oberman. To state a claim of retaliation under § 1983,a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). An inmate must also present more than conclusory accusations of retaliation, *id.* at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. *See, e.g., Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996); *Hughes v. Bledsoe*, 48 F.3d. 1376, 1387 n. 11 (4th Cir. 1995). Further, a plaintiff must show that he suffered some adverse impact on the continued exercise of his

---

[3]Although Plaintiff makes this claim, the undersigned is constrained to note that all of the grievances Plaintiff has attached as exhibits to his Complaint reflect that they were timely processed and ruled upon by prison officials.



8

constitutional rights as a result of the retaliatory conduct. *American Civil Liberties Union, Inc. v. Wicomico County*, 999 F. 2d 780, 785 (4th Cir. 1993). As indicated above, Plaintiff has no constitutionally protected right to a prison grievance procedure. Plaintiff has also set forth no factual allegations to establish that his placement in either the ATU or the "supermax" was because of any retaliatory animus. Rather, Plaintiff only conclusorily states that these placements were retaliatory. Therefore, Plaintiff's claim that he was retaliated against by Defendant Oberman for filing grievances is subject to summary dismissal.

Finally, while Plaintiff also mentions Oberman in the text of his Complaint in relation to his seeking religious materials and with respect to a "hostage taking" incident, these allegations do not establish a constitutional claim. There is no indication in the allegations of the Complaint that Oberman is improperly denying Plaintiff religious materials. To the contrary, it appears that Oberman offered to assist the Plaintiff. It also does not appear from a plain reading of the Complaint that Plaintiff was even involved in the "hostage taking" event referenced in the Complaint.

<u>Recommendation</u>

Accordingly, it is recommended that the Court dismiss the Complaint *without* prejudice and without service of process.

Bristow Marchant
United States Magistrate Judge

July 10, 2012
Charleston, South Carolina

*Plaintiff's attention is directed to the important notice on the next page.*

9

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

